UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| In re *Ex Parte* Application of Petronas Azerbaijan (Shah Deniz) S.à r.l. and Petronas South Caucasus S.à r.l., pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings,<br><br>Petitioners. | Case No. 3:26-mc-00079 |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

ROBINSON, BRADSHAW & HINSON, P.A.
*Attorneys for Petronas Azerbaijan (Shah Deniz)*
*S.à r.l. and Petronas South Caucasus S.à r.l.*

Dated: July 2, 2026

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

I. HISTORICAL AND FACTUAL BACKGROUND .............................................................4

II. ENFORCEMENT OF THE PURPORTED AWARDS IN LUXEMBOURG....................7

III. DR. STAMPA IS HELD IN CONTEMPT OF THE SPANISH COURT..........................8

IV. PETITIONERS' PREVIOUS APPLICATIONS..................................................................9

V. THE JERSEY CIVIL PROCEEDINGS ..........................................................................13

VI. CONTEMPLATED CIVIL CLAIM AGAINST DR. STAMPA IN SPAIN.....................14

VII. CONTEMPLATED CIVIL CLAIMS AGAINST THE LAWYER DEFENDANTS, THE SULU CLAIMANTS, AND/OR THE FUNDER PURSUANT TO ARTICLE 1,902 OF THE SPANISH CIVIL CODE ............................15

VIII. CONTEMPLATED CIVIL ACTION IN LUXEMBOURG AGAINST THE SULU CLAIMANTS AND/OR THE FUNDER ON THE BASIS OF TORTIOUS LIABILITY ..............................................................................................................16

IX. DISCOVERY TO BE REQUESTED................................................................................18

ARGUMENT ......................................................................................................................19

I. PETITIONERS SATISFY THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782....................................................................................................................20

II. THE COURT SHOULD GRANT THE PROPOSED DISCOVERY ORDER ................22

III. THE COURT SHOULD GRANT PETITIONERS' APPLICATION EX PARTE ..........24

CONCLUSION....................................................................................................................25

i

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

**Cases**

*In re Banco Mercantil del Norte, S.A.*,
  126 F.4th 926 (4th Cir. 2025) .......................................................................................19, 20

*In re Batbold*,
  No. 21-MC-218 (RA) (OTW), 2023 WL 2088524 (S.D.N.Y. Feb. 17, 2023) .......................21

*In re Blue Skye Fin. Partners S.A.R.L.*,
  22 Misc. 171 (KPF), 2022 WL 2441074 (S.D.N.Y. July 5, 2022) ....................................21, 23

*In re China Constr. Bank (Asia) Corp. Ltd.*,
  No. 23-MC-17 (JMF), 2023 WL 3791711 (S.D.N.Y. June 2, 2023).....................................22

*Goenechea v. Davidoff*,
  Civil No. CCB-15-3384, 2016 WL 560689 (D. Md. Feb. 11, 2016).....................................23

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)................................................................................... *passim*

*In re O'Keeffe*,
  646 F. App'x 263 (3d Cir. 2016) ................................................................................23

*In re P.T.C. Prod. & Trading Co., AG*,
  No. 1:20-MC-00032-MR-WCM, 2020 WL 7318100 (W.D.N.C. Dec. 11,
  2020) .........................................................................................................23, 24, 25

*In re Polygon Glob. Partners LLP*,
  21 Misc. 364 (ER), 2021 WL 5042733 (S.D.N.Y. Oct. 29, 2021) .........................................21

*In re Polymer Sols. Intl, Inc.*,
  No. CV DKC 18-1864, 2018 WL 11226113 (D. Md. June 27, 2018)..............................21, 24

*In re Qwest Commc'ns Intl Inc.*,
  No. 3:08MC93, 2008 WL 2741111 (W.D.N.C. July 10, 2008).......................................24, 25

*In re Servicio Pan Americano de Proteccion*,
  354 F. Supp.2d 269 (S.D.N.Y.2004)..............................................................................23

*United States v. Zubaydah*,
  595 U.S. 195 (2022)..................................................................................................24, 25

**Statutes**

28 U.S.C. § 1782............................................................................................. *passim*

**Other Authorities**

Art. 1382 Luxembourgish Civil Code ...............................................................................16

Art. 1383 Luxembourgish Civil Code ...............................................................................16

Art. 1,902 Spanish Civil Code ......................................................................................14,15

Art. 1,968 Spanish Civil Code ..........................................................................................15

Hague Conference on Private International Law, Jersey Declaration Page,
    https://www.hcch.net/en/instruments/conventions/status-
    table/notifications/?csid=881&disp=resdn (last visited Jun. 29, 2026) ..................................23

Hague Conference on Private International Law, Luxembourg Member Page,
    https://www.hcch.net/en/states/hcch-members/details1/?sid=51 (last visited
    Jun. 29, 2026) ......................................................................................................23

Hague Conference on Private International Law, Spain Member Page,
    https://www.hcch.net/en/states/hcch-members/details1/?sid=69 (last visited
    Jun. 29, 2026) ......................................................................................................23

Petronas Azerbaijan (Shah Deniz) S.à r.l. and Petronas South Caucasus S.à r.l. (collectively, "**Luxcos**" or "**Petitioners**"), respectfully submit this memorandum of law in support of their application for an order, pursuant to 28 U.S.C. § 1782, to conduct discovery for use in aid of a foreign proceeding (the "Application").[1]

## INTRODUCTION

Petitioners' Application arises from efforts to enforce unlawfully obtained arbitration awards (the "**Purported Awards**") rendered against the government of Malaysia. The underlying arbitration (the "**Arbitration**"), tied to a long-standing territorial dispute involving certain purported descendants of the former regional sultanate (the Sultanate of Sulu) (the "**Sulu Claimants**"), has been controversial from inception to its shocking conclusion. The highly irregular, and recently vacated, final award in the Arbitration (the "**Final Award**"), was issued by a private Spanish commercial arbitrator even though his appointment was annulled by the same Spanish Court that appointed him. Notwithstanding that annulment, the arbitrator purported to move the seat of the Arbitration from Madrid to Paris where he—without any legal authority— issued the now vacated Final Award.

---

[1]This is the sixth application pursuant to 28 U.S.C. § 1782 filed by Petitioners in relation to the Spanish and Luxembourg Proceedings (as defined herein) and the third application made in connection with the Jersey Proceedings (as defined herein).Two of the prior applications made in connection with the Spanish and Luxembourg Proceedings were filed in and granted by the United States District Court for the Southern District of New York. *See In Re Petronas Azerbaijan (Shah Deniz) S.a.r.l et al.*, 1:24-mc-00242-AKH (S.D.N.Y. July 11, 2024), ECF No. 14; *In Re Petronas Azerbaijan (Shah Deniz) S.a.r.l et al.*, 1:24-mc-00546-JPO (S.D.N.Y. November 26, 2024), ECF No. 10. The third application made in connection with those same proceedings was filed in and granted by the United States District Court for the District of Delaware. *See In Re Petronas Azerbaijan (Shah Deniz) S.a.r.l et al.*, 1:24-cv-01283-CFC (D. Del. December 9, 2024), ECF No. 9 (collectively with the first and second applications, the "**Previous Applications**"). The fourth and fifth applications made in connection with the Spanish and Luxembourg Proceedings (which are the first and second applications made in connection with the Jersey Proceedings) were filed in the Southern District of New York on June 26, 2026 and in the Eastern District of New York on June 29, 2026. The seventh and eighth applications made in connection with the Spanish and Luxembourg Proceedings (which are the fourth and fifth applications made in connection with the Jersey Proceedings) will be filed in the Eastern District of Texas and the Northern District of Alabama, respectively, either contemporaneously or soon after the filing of this application.

Petitioners, non-parties to the Arbitration, have incurred, and continue to incur, significant damages in seeking to set aside certain attachments that have been improperly levied over their bank accounts in connection with efforts to enforce the Purported Awards, which the Sulu Claimants threaten to pursue against the worldwide assets of the corporate group of which Petitioners are members, Petroliam Nasional Berhad ("**Petronas**"), a global Malaysian energy corporation. *See* Declaration of J'Naia L. Boyd dated June 30, 2026 (the "**Boyd Decl.**") ¶ 3.

The Sulu Claimants have persisted in their efforts to enforce the Purported Awards, despite the fact that the arbitrator, Dr. Gonzalo Stampa ("**Dr. Stampa**" or the "**Arbitrator**"), was criminally convicted in Spain for continuing to preside over the Arbitration after the Spanish court's annulment of his appointment, sentenced to six months in prison and given a one-year ban from acting as arbitrator.

Petitioners have commenced proceedings in Jersey and intend to use the discovery sought here to aid those proceedings. Specifically, Petitioners have commenced civil proceedings in Jersey (the "**Jersey Proceedings**") against: (i) certain entities that were involved in funding the Sulu Claimants in the Arbitration (as defined below) and the enforcement proceedings in Luxembourg, which include Therium Group Holdings Limited ("**Therium Holdings**"), Therium Capital Management Limited ("**Therium Capital**"), and Therium Litigation Finance Atlas AFP IC ("**Therium Atlas AFP**") (a special purpose vehicle within the Therium group of companies (the "**Therium Group**") that disbursed funds in relation to the Arbitration); (ii) certain lawyers who acted for the Sulu Claimants, namely, Mr. Paul Henri Cohen ("**Mr. Cohen**") and Ms. Elisabeth Adams Mason ("**Ms. Mason**"), Mr. Bernardo M Cremades Sanz-Pastor, Mr. Bernardo M Cremades Román, and the law firm in which they are partners, B. Cremades y Asociados (collectively, the "**Cremades Defendants**") (together, with Mr. Cohen and Ms. Mason, the

2

"**Lawyer Defendants**"); and (iii) the Sulu Claimants (collectively, the "**Jersey Defendants**"). In the Jersey Proceedings, Petitioners plead that, notwithstanding the clear legal effects of the June 29, 2021 Judgment and the July 2021 Injunctions (as defined below), each of the Jersey Defendants combined to use unlawful means to, among other things, procure the purported continuation and reseating of the Arbitration in order to secure the Final Award, and thereafter enforce the Purported Awards against Petitioners in Luxembourg thereby causing loss and damage to Petitioners. Petitioners therefore seek, *inter alia*, damages for such injury as well as permanent injunctive relief preventing the Jersey Defendants from taking any steps to enforce (or procure any other persons to enforce) the Purported Awards.

In the event that the Jersey action is dismissed on jurisdictional grounds, Petitioners intend to pursue: (1) a civil claim against Mr. Stampa in Spain for damages arising from the Jersey Defendants' efforts to enforce the unlawful Final Award; (2) a civil claim in Spain for willful negligence against the Jersey Defendants and any other relevant entity funding and/or supporting the Sulu Claimants in the Arbitration and the present global enforcement proceedings (together with relevant members of the Therium Group, the "**Funder**"); and (3) civil claims against the Sulu Claimants and the Funder in Luxembourg to recover the losses arising out of the Attachments (as defined below) improperly brought against them.

In connection with the above-referenced lawsuits (the Jersey Proceedings and the Spanish and Luxembourg proceedings, collectively the "**Foreign Proceedings**"), Petitioners seek discovery from Christopher Bryan ("**Mr. Bryan**"), a resident of this District, relating to: (1) the Therium Group's analysis and decision to fund the Arbitration and efforts to secure third-party investment; (2) the roles played by the Therium Group, Mr. Cohen, and Ms. Mason prior to the Arbitration; (3) the Jersey Defendants' motives for continuing the Arbitration despite the clear

3

legal effect of the June 29, 2021 Spanish judgment and the July 2021 Injunctions; (4) the Sulu Claimants' enforcement strategy, including actions against Petitioners in Luxembourg; and (5) the Therium Group's control over the Sulu Claimants' legal and enforcement strategy.

**FACTUAL BACKGROUND**

**I.      HISTORICAL AND FACTUAL BACKGROUND**

The underlying dispute concerns a 19th century agreement relating to certain Malaysian sovereign territory located on the North Coast of Borneo, Malaysia (the "Territory" or "Sabah"). On January 4, 1878, Sultan Mohammed Jamulul Alam (the "**Sultan of Sulu**") entered into an agreement with Messrs. Alfred Dent and Baron Gustavus de Overbeck ("**Dent and Overbeck**") for the cession of the Territory ("**1878 Agreement**"). *See* First Declaration of Fabio Trevisan dated May 28, 2024 (the "**Trevisan Decl. 1**") ¶ 7,[2] a true and correct copy of which is attached as Exhibit A to the Second Declaration of Fabio Trevisan dated June 18, 2026 (the "**Trevisan Decl. 2**"). Pursuant to the 1878 Agreement, Dent and Overbeck were required to make an annual payment to the Sultan of Sulu equivalent to 5,000 Malaysian Ringgit (approximately US$1,050 based on the exchange rate on May 14, 2024). Trevisan Decl. 1 ¶ 7.

Over time, the contracting parties to the 1878 Agreement changed. In 1963, Malaysia assumed responsibility for the annual payments. *Id*. Malaysia made the annual payments until 2013, stopping after an armed incursion by militants calling themselves the "Royal Security Forces of the Sultanate of Sulu and North Borneo" on February 11, 2013. *Id.* ¶ 9. In 2017, the Sulu Claimants sought to initiate a dispute resolution process against Malaysia for its failure to tender payment under the 1878 Agreement. *Id*. ¶ 10. On May 28, 2017, the Sulu Claimants informed

---

[2]The First Trevisan Declaration was filed in support of Petitioners' first application in the Southern District of New York, *In Re Petronas Azerbaijan (Shah Deniz) S.a.r.l et al.*, 1:24-mc-00242-AKH (S.D.N.Y. July 11, 2024), ECF No. 6, which was premised on very similar issues of fact and law to the present application.

Malaysia that they intended to initiate arbitration proceedings regarding those failed payments. *Id.* ¶ 11.

On February 1, 2018, the Sulu Claimants initiated proceedings for the judicial appointment of an arbitrator before the Civil and Criminal Chamber of the Superior Court of Justice of Madrid (the "**Madrid High Court**"). *Id.* ¶ 13. On May 22, 2019, the Madrid High Court appointed Dr. Stampa as sole arbitrator. *Id.* Shortly afterwards, the Arbitration commenced. *Id.*

On May 25, 2020, Dr. Stampa issued a preliminary award (the "**Partial Award**") confirming, *inter alia*, his jurisdiction, Madrid as the seat of the arbitration, and the validity of the purported arbitration agreement. *Id.* ¶ 15. He also ordered Malaysia to pay the full costs of the jurisdictional phase of the Arbitration. *Id.*

On June 20, 2020, the Sulu Claimants submitted their Memorandum of Request in which they detailed their claims. *Id.* ¶ 16. A hearing on the merits was held on February 15 and 16, 2021. *Id.* At Malaysia's request, on June 29, 2021, the Madrid High Court annulled several of its earlier procedural decisions, including the appointment of Dr. Stampa as sole arbitrator in the Arbitration, the effect of which was to render his appointment as sole arbitrator void *ab initio* and to nullify his historic and future actions in that capacity (the "**June 29, 2021 Judgment**"). *Id.* ¶ 17; First Declaration of Pedro Soriano dated May 28, 2024 (the "**Soriano Decl. 1**") ¶ 14,[3] a true and correct copy of which is attached as Exhibit A to the Second Declaration of Pedro Soriano dated June 30, 2026 (the "**Soriano Decl. 2**").

Thereafter, the Madrid Court twice ordered Dr. Stampa to immediately cease his activities as an arbitrator (the "**July 2021 Injunctions**"). *See* Soriano Decl. 1 ¶ 15. Notwithstanding the

---

[3]The First Soriano Declaration was filed in support of Petitioners' first application in the Southern District of New York, *In Re Petronas Azerbaijan (Shah Deniz) S.a.r.l et al.*, 1:24-mc-00242-AKH (S.D.N.Y. July 11, 2024), ECF No. 5, which was premised on very similar issues of fact and law to the present application.

5

June 29, 2021 Judgment and the July 2021 Injunctions, the Sulu Claimants filed an *ex parte* petition with the Tribunal de Grande Instance de Paris for recognition of the Partial Award, which granted the Sulu Claimants' request on September 29, 2021 (the "**French Exequatur**"). *Id.* ¶ 16. On October 29, 2021, Dr. Stampa purported to transfer the seat of the Arbitration from Madrid to Paris. *See* Trevisan Decl. 1 ¶ 20.

On December 10, 2021, Malaysia applied to the Paris Court of Appeal to set aside the French Exequatur. *Id.* ¶ 21. On the same day, Malaysia requested that the Paris Court of Appeal suspend the French Exequatur pending its appeal (the "**French Exequatur Appeal**"). *Id.* The Paris Court of Appeal suspended the French Exequatur on December 16, 2021. *Id.* ¶ 22. However, that stay was lifted on June 10, 2022. *Id.*

On February 28, 2022, Dr. Stampa rendered a final award in Paris (the "**Final Award**"). *Id.* ¶ 23. The Final Award ordered Malaysia to pay the restitution value of the rights over the Territory, with pre-award interest of 3.96% per annum, as of January 1, 2013, until 2044, and ordered Malaysia to pay US$14.92 billion to the Sulu Claimants. *Id.* ¶ 23 and Exhibit 3 thereto. The Final Award, which purported to redraw the Malaysian borders, is one of the largest arbitral awards in history. *Id.* ¶ 23 and Exhibit 1 thereto. The Final Award also ordered Malaysia to pay 10% interest per annum on the US$14.92 billion award. *Id.*

On March 3, 2022, Malaysia initiated annulment proceedings in respect of the Final Award with the Paris Court of Appeal (the "**French Annulment Application**"). *Id.* ¶ 24. A stay of these proceedings was ordered, pending the decision of the French Cour de Cassation in relation to the French Exequatur Appeal. *Id.* On June 6, 2023, the Paris Court of Appeal overturned the French Exequatur, finding that there was no enforceable arbitration agreement between the Sulu Claimants and Malaysia (the "**June 6, 2023 Decision**"). *Id.* ¶ 25. On June 21, 2023, the Sulu Claimants filed

6

an unsuccessful petition before the French Cour de Cassation to try to overturn this decision. *See* Boyd Decl. ¶¶ 4–5.

On December 22, 2023, Dr. Stampa was found criminally liable for violating Article 556(1) of the Spanish Penal Code (the "**Stampa Conviction**"). Trevisan Decl. 1 ¶ 26. On May 17, 2024, the Madrid Court of Appeal dismissed Dr. Stampa's appeal of the Stampa Conviction ("**Madrid Court of Appeal Decision**"). Soriano Decl. 1 ¶ 23. Dr. Stampa's appeal of the Madrid Court of Appeal Decision was denied by the Spanish Supreme Court on October 8, 2025, such that the Stampa Conviction is now final (the "**Spanish Supreme Court Decision**"). *See* Soriano Decl. 2 ¶ 11.

On December 9, 2025, the French Court of Appeal ordered the Final Award to be set-aside (the "**French Decision**"). *See* Trevisan Decl. 2 ¶ 12 Ex. B. The French Decision confirmed that the arbitration agreement in the 1878 Agreement was not effective and accordingly set aside the Final Award. *See id.*

## II.   ENFORCEMENT OF THE PURPORTED AWARDS IN LUXEMBOURG

On May 18, 2022, the Sulu Claimants obtained an order from the President of the District Court of Luxembourg confirming the recognition and enforceability of the Final Award (the "**Luxembourg Exequatur**"). Trevisan Decl. 1 ¶ 27. On September 6, 2022, Malaysia challenged the Luxembourg Exequatur in the Luxembourg Court of Appeal. *Id.*

On July 11, 2022, the Sulu Claimants served on nine banks an attachment on assets owned by Luxcos (the "**First Attachment**"). *Id.* ¶ 28. Luxcos were served with the First Attachment on July 15, 2022, which claims, without evidence, that Luxcos are alter egos of Malaysia. *Id.* On July 11, 2022, the Sulu Claimants also served on Luxcos an attachment on the shares held by Malaysian company Petronas Azerbaijan Upstream Sdn. BHD ("**PAUSB**") in Luxcos, as well as

7

any claim PAUSB may have against Luxcos such as dividends and loan reimbursements (the "**First PAUSB Attachment**"). *Id.* ¶ 29.

On September 7 and 8, 2022, Luxcos filed proceedings in the District Court of Luxembourg ("**Luxembourg District Court**"), to obtain a withdrawal of the First Attachment. *Id.* ¶ 30. On January 24, 2023, the Luxembourg District Court withdrew the First Attachment on the basis that the Sulu Claimants had not complied with Luxembourgish civil procedure (the "**First Attachment Decision**"). *Id.* On August 31, 2022, PAUSB filed proceedings in the Luxembourg District Court to apply for the First PAUSB Attachment to be lifted. *Id.* ¶ 31. On January 24, 2023, the Luxembourg District Court withdrew the First PAUSB Attachment on the basis that the Sulu Claimants had not complied with Luxembourgish civil procedure (the "**First PAUSB Attachment Decision**"). *Id.*

Notwithstanding the Luxembourg District Court's decision to withdraw the First Attachment proceedings, the Sulu Claimants maintained their request to validate the First Attachment on the merits. *Id.* ¶ 32. This approach is not legally viable as, under prevailing case law, these proceedings became "without object" upon the issuance of the First Attachment Decision. *Id.* On February 14, 2023, the Sulu Claimants served on seven banks a new attachment on the assets owned by Luxcos (the "**Second Attachment**," and together with the First Attachment, the "**Attachments**"), again on the basis of the Purported Awards. *Id.* ¶ 34. The Sulu Claimants served on Luxcos a new attachment on the shares held by PAUSB in Luxcos as well as any claim PAUSB may have against Luxcos such as dividends and loan reimbursements (the "**Second PAUSB Attachment**"), again on the basis of the Purported Awards. *Id.* ¶ 35.

## III.    DR. STAMPA IS HELD IN CONTEMPT OF THE SPANISH COURT

On December 22, 2023, Dr. Stampa was found criminally liable for violating Article 556(1) of the Spanish Penal Code for "serious disobedience to authority" (i.e., contempt of court)

8

by the judgment of Spanish Criminal Court No. 31 of Madrid.  Soriano Decl. 1 ¶ 22.  For the Court's reference, it is worth noting the following excerpt from the Stampa Conviction:

> It is clear from all this that [Dr. Stampa] had not only ceased to have the status of arbitrator since the final court decision of 29 June 2021 was issued, but even that he had virtually never become one, due to the absolute dismissal of the appointment made at the time. What is relevant for the purposes of the charge of disobedience is that, from the defendant's perspective and in practice, the consequence of that dismissal could only be to put an immediate and complete end to the arbitration proceedings.

*Id.* at Ex. 5 thereto.

Dr. Stampa was given a six-month prison sentence and a one-year bar from acting as arbitrator.  *Id.* ¶ 23.  On May 17, 2024, the Madrid Court of Appeal dismissed Dr. Stampa's appeal of the Stampa Conviction.  *Id.*  Dr. Stampa's appeal of the Madrid Court of Appeal Decision was denied by the Spanish Supreme Court on October 8, 2025, such that the Stampa Conviction is now final.  Soriano Decl. 2 ¶ 11.

## IV.     PETITIONERS' PREVIOUS APPLICATIONS

As noted above, this is the sixth application pursuant to 28 U.S.C. § 1782 filed by Petitioners in relation to the Foreign Proceedings.

Petitioners have obtained disclosures from parties subpoenaed through the Previous Applications, including Pacific Strategies & Assessments Americas LLC (the "**PSA LLC**"), CF Taurus US LLC ("**CF Taurus**"), Barclays Bank PLC ("**Barclays**") and Bank of America ("**BOA**").  These disclosures indicate that members of the Therium Group were involved in financing the Sulu Claimants' potential claim against Malaysia.

PSA LLC produced, *inter alia*, documents (the "**PSA Disclosures**"), confirming that on



Notably, 11 of the 12 payments transfer records include the reference "Case 15.205," which Petitioners reasonably believe is the internal case reference used by the Therium Group for the Sulu Claimants' claim. *See* Declaration of Gonzalo S. Zeballos dated June 29, 2026 ("**Zeballos Decl.**") ¶ 5 n.2.



---

[4] PSA LLC and PSA are a part of the PSA group of companies.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

On May 12, 2017, Mr. Williams incorporated Chancery Advisors Pte Ltd in Singapore ("**Chancery Advisors**") while PSA was still working for Mr. Cohen. Petitioners reasonably believe that following the conclusion of PSA's involvement in the matter, Chancery Advisors was involved in providing assistance to the Sulu Claimants with their claim against Malaysia in a similar manner to that in which PSA had previously been engaged. *Id.* ¶ 12, Ex. 10.

CF Taurus[5] produced documents indicating that ■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Further, Barclays has produced documents (the "**Barclays Disclosures**") showing that various entities within the Therium Group paid, at least, a total of US$24,366,723.38 to Mr. Cohen and Chancery Advisors to support the Sulu Claimants' claim against Malaysia between August 8, 2017 and June 28, 2024.[6] Many of the descriptions for these payments to Mr. Cohen and Chancery Advisors refer to the code "15.205."

The Barclays Disclosures also confirm that a Luxembourgish company named IVO Global Insured Litigation Fund ("**IVO Global**") sent US$4,000,000 to Therium Atlas AFP, a member of

---

[5]CF Taurus is an affiliate in the Fortress Investment Group, LLC ("**Fortress**") group of companies.

[6]As noted in the Zeballos Decl., the disclosures from the Prior Applications include bank records containing numerous wire transfers produced in Excel format. This includes the Barclays Disclosures and BOA Disclosures. Many of these transfers are irrelevant and include personally identifiable information. Exhibiting these voluminous records to the declarations would require extensive redactions across numerous pages, even in excerpt form. Accordingly, the bank records are not attached to the Boyd Decl. However, Petitioners are prepared to provide the records to the Court upon request.

the Therium Group, which disbursed funds to Mr. Cohen and Chancery Advisors on May 14, 2021. The description of IVO Global's payment to Therium Atlas AFP contained the reference "15.205."

These disclosures confirm Therium Group's efforts to solicit third-party funding for the Sulu Claimants' claim and its extensive financial support of the Sulu Claimants. Given his senior position at Therium USA from August 2023 to at least March 2025, Mr. Bryan likely was involved in these activities. Additionally, the Barclays Disclosures and disclosures obtained from BOA (the "**BOA Disclosures**") show that non-Therium Group entities also financially supported Mr. Cohen and/or the Sulu Claimants' claim. In particular, Chancery Advisors made 12 payments totaling US$711,269 to Mr. Cohen and Ms. Mason between July 23, 2021 and December 19, 2024. Furthermore, two English companies, Crisis Mechanics Limited and Sanzaru Communications Limited, both of which are controlled by Mr. Charles Webb (apparently "Therium's own chosen strategic lead" for the Sulu Claimants' dispute), made ten payments totaling US$322,500.61 between October 2, 2023 and November 20, 2023 to Mr. Cohen. In summary, the following payments were made by entities within the Therium Group and Chancery Advisors to Mr. Cohen, and by Mr. Cohen to various persons connected to the Arbitration (including Cremades).

| Year | Funds transferred to Mr. Cohen (US$) | Funds disbursed by Mr. Cohen (US$) |
|---|---|---|
| 2016 | 806,297 | N/A |
| 2017 | 2,280,000 | 162,975 |
| 2018 | 1,362,113.79 | 177,069.97 |
| 2019 | 229,700 | 1,104,738.83 |
| 2020 | 1,604,552.80 | 3,097,091.25 |
| 2021 | 4,857,259.27 | 1,761,199.02 |
| 2022 | 6,702,000 | 2,832,093.96 |
| 2023 | 2,902,551.76 | 1,132,874.33 |
| **Total** | **20,744,474.62** | **10,268,042.36** |

The Barclays Disclosures confirm that Mr. Cohen transferred US$4,604,527.54 to his own bank accounts in regular payments between August 10, 2016, and June 29, 2023. The Barclays

Disclosures also indicate that Mr. Cohen paid Ms. Mason, Mr. Cohen's co-counsel to the Sulu Claimants and spouse, US$2,943,000, sent in 98 payments between July 15, 2016 and June 27, 2023. Petitioners reasonably infer that these payments by Mr. Cohen are connected to possible legal services provided by him and Ms. Mason to the Sulu Claimants in the context of the Dispute, noting that the payment descriptions are linked to monthly activity and on two occasions refer to a 'bonus'.

## V. THE JERSEY CIVIL PROCEEDINGS

Petitioners initiated the Jersey Proceedings against the Jersey Defendants before the Royal Court of Jersey on May 19, 2025. *See* Declaration of Amy Benest dated June 30, 2026, ("**Benest Decl.**") ¶ 30. In the Jersey Proceedings, Petitioners allege an unlawful means conspiracy, claiming that, *inter alia*, the Jersey Defendants combined with the common objective (the "**Objective**") of obtaining a financial benefit at the expense of Malaysia and any persons against whom they could seek to enforce any arbitral award against Malaysia, including Petitioners (the "**Target Class**"). *Id.* ¶ 32. Petitioners contend that some or all of the Jersey Defendants used several unlawful means in pursuit of the Objective including (but not limited to) the following:

    a.    Prior to the issuance of the Final Award, inducing Dr. Stampa to purportedly reseat the Arbitration from Madrid to Paris, and then to issue the Final Award against Malaysia in favor of the Sulu Claimants; and

    b.    After the Final Award was issued, enforcing the Purported Awards against Petitioners by attaching their assets in Luxembourg and by seeking to validate the Attachments in the Luxembourg District Court.

*Id.* ¶ 34. The Jersey Defendants' common intention was to harm Petitioners who have suffered, and continue to suffer, harm.

13

This Application seeks documentary and testimonial evidence for use in the Jersey Proceedings relating to the Jersey Defendants': (1) agreement to act in breach of the June 29, 2021 Judgment and the July 2021 Injunctions; (2) conspiracy to cause loss to Petitioners by the use of unlawful means prior to the June 29, 2021 Judgment; (3) agreement to use any other unlawful means to carry out the conspiracy; and (4) intention to harm the Target Class, including when each of the Jersey Defendants began and ceased to be involved in the unlawful means conspiracy. *Id.* ¶ 45.

## VI. CONTEMPLATED CIVIL CLAIM AGAINST DR. STAMPA IN SPAIN

As noted in the accompanying Benest Decl., the Lawyer Defendants have filed jurisdictional objections to the Jersey Proceedings. *Id.* ¶¶ 40–41. In the event that these jurisdictional objections are successful, Petitioners intend to file a civil claim against Dr. Stampa in the First Instance Courts of Madrid (the **"Stampa Claim"**). Soriano Decl. 1 ¶ 25. Dr. Stampa's civil liability will extend to all losses suffered by *any injured party* as a result of his criminal actions. *Id.* The Sulu Claimants have enforced the Purported Awards against Petitioners in Luxembourg. *Id.* ¶ 26. Petitioners have been, and continue to be, harmed by Dr. Stampa's acts due to the Attachments being pursued against them in Luxembourg. *Id.* ¶ 27. Pursuant to Article 111 of the Spanish Criminal Code, the one-year limitation period was only triggered after the Spanish Supreme Court Decision on October 8, 2025. Soriano Decl. 2 ¶ 11. That period is tolled under circumstances where the harm is ongoing, which is the case here. *Id.* ¶ 15.

Petitioners' contemplated claim against Dr. Stampa is based on Article 1,902 of the Spanish Civil Code, which regulates tort liability and allows claims for damages suffered because of an act or omission of one person towards another due to fault or negligence. Soriano Decl. 1 ¶ 32. In order to establish tort liability under Spanish law, a party must prove: (i) a tortious act or omission by a certain person; (ii) actual harm; and (iii) the existence of a causal link between the act or

omission performed and the damage caused. *Id.* ¶ 33. As to the first requirement, the act or omission must be willful or negligent. *Id.* ¶ 34.

Petitioners' losses in Luxembourg are caused by Dr. Stampa's unlawful acts in continuing the Arbitration and issuing the Final Award notwithstanding the nullification of his appointment as Arbitrator, which led to the Sulu Claimants' enforcement of the Purported Awards in Luxembourg. *Id.* ¶ 35.

## VII. CONTEMPLATED CIVIL CLAIMS AGAINST THE LAWYER DEFENDANTS, THE SULU CLAIMANTS, AND/OR THE FUNDER PURSUANT TO ARTICLE 1,902 OF THE SPANISH CIVIL CODE

In the event that the jurisdictional objections by the Lawyer Defendants are successful, Petitioners also intend to bring a civil action for tort liability under Article 1,902 of the Spanish Civil Code against the Sulu Claimants, the Lawyer Defendants, and/or the Funder, which would be filed jointly with the civil action against Dr. Stampa in the Madrid First Instance Court (the "**Spanish Tort Claim**"). *Id.* ¶ 38. This is because the damage incurred by Petitioners comes from a joint action by the Lawyer Defendants, and the Funder, which induced Dr. Stampa to continue the Arbitration and issue the irregular Final Award notwithstanding the June 29, 2021 Judgment. Soriano Decl. 2 ¶¶ 19–20.

Liability for this claim will be premised on a failure to act with the standard of diligence duly required following the June 29, 2021 Judgment, the legal effect of which the Cremades Defendants should have been known and understood. Soriano Decl. 1 ¶ 40.

Pursuant to Article 1,968 of the Spanish Civil Code, Petitioners have one year from the Spanish Supreme Court Decision on October 8, 2025 to file the Spanish Tort Claim. Soriano Decl. 2 ¶ 15. That period is tolled under circumstances where the harm is ongoing, which is the case here. *Id.*

The documentary evidence sought by way of this Application shall be used to establish that the prospective defendants knew of the legal status of the June 29, 2021 Judgment under Spanish law, and yet made a conscious decision to continue to participate in (and, in the case of the Funder, fund) the Arbitration, and promote the improper attempt to transfer of the seat of the Arbitration from Madrid to Paris.  Soriano Decl. 1 ¶ 42.

## VIII. CONTEMPLATED CIVIL ACTION IN LUXEMBOURG AGAINST THE SULU CLAIMANTS AND/OR THE FUNDER ON THE BASIS OF TORTIOUS LIABILITY

In the event that the jurisdictional objections by the Lawyer Defendants are successful, Petitioners also intend to bring a civil action for tort liability in Luxembourg.  Tortious liability is provided for by Articles 1382 and 1383 of the Luxembourgish Civil Code, which read as follows:

> Art. 1382
> Any act of man that causes damage to others obliges the person by whose fault it occurred, to repair it.
> Art. 1383
> Everyone is responsible for any damage he has caused not only by his action, but also by his negligence, or by his carelessness.

Trevisan Decl. 1 ¶ 37.

Based on these legal provisions, three cumulative elements need to be proven for a tortious claim to be successful in a Luxembourg court, *i.e.* (i) a tortious act, (ii) a damage and (iii) a causal link between the two.  *Id.* ¶ 38.  Petitioners will be able to satisfy these three elements.  *Id.* ¶ 39.

Regarding the first element of the tortious claim, the relevant tortious acts are:

a.  The Sulu Claimants initiated enforcement proceedings in Luxembourg on the basis of the Purported Awards (*See id.* at Ex. 8 ¶ 3), despite the fact that the June 29, 2021 Judgment of the Spanish courts nullified Dr. Stampa's appointment as Arbitrator.  Soriano Decl. 1 ¶ 14.

b.  The Sulu Claimants sought to maximize the publicity of the First Attachment by

16

providing non-public documents to the press. Trevisan Decl. 1 ¶ 40(b) and Ex. 13 thereto; and

c.    The Sulu Claimants did not withdraw the validation proceedings in relation to the First Attachment despite the current case law. *Id.* ¶ 40(c). The Sulu Claimants did not propose to stay either of the Attachments in Luxembourg after the June 6, 2023 Decision, despite a judicial finding by an appellate court at the purported seat of the Arbitration that found there was no enforceable arbitration agreement. *Id.*

These actions and omissions by the Sulu Claimants have caused Petitioners significant harm. *Id.* ¶ 41.

The Funder has financed, and, it is understood, continues to finance, the Sulu Claimants' claims against Malaysia and the enforcement of the Purported Awards. *Id.* ¶ 42. Without the Funder's financial and strategic input, the Sulu Claimants would have been unable to pursue the proceedings in Luxembourg and Petitioners would not have suffered the losses detailed above. *Id.*

Regarding the second element for establishing a tortious claim, the discovery sought relates to the damage caused to Petitioners as a result of the tortious act, and specifically:

a.    Which entity(ies) or person(s) decided to initiate the Luxembourg enforcement proceedings against Petitioners to determine liability. *Id.* ¶ 47(a).

b.    Whether the prospective defendants sought to improperly and unlawfully pressure Petitioners by freezing their assets through the Attachments. *Id.* ¶ 47(b).

c.    When and why the First Attachment proceedings were commenced despite the annulment of Dr. Stampa's authority as Arbitrator before the issuance of the Final Award and then maintained despite the summary withdrawal of the First Attachment. *Id.* ¶ 47(c).

17

d.     The motivation behind maintaining the First Attachment even though it was lifted by the First Attachment Decision. *Id.* ¶ 47(d).

e.     The motivation behind launching and then maintaining the Second Attachment despite the Paris Court of Appeal annulling the Exequatur for lack of a valid arbitration agreement in the 1878 Agreement. *Id.* ¶ 47(e).

To bring the Luxembourgish civil claim, two things must occur: First, Petitioners must identify all relevant entities who provided financial and strategic support to the Sulu Claimants because, under Luxembourg procedural law, they are not allowed to later amend their complaint to add defendants. Trevisan Decl. 2 ¶¶ 18–21.  Second, the pending Luxembourgish enforcement actions must conclude to enable Petitioners to quantify the losses they have incurred. *Id.* ¶ 11.

## IX.     DISCOVERY TO BE REQUESTED

Petitioners seek disclosure from Mr. Bryan that is relevant to the Jersey Proceedings and the proposed civil actions against Dr. Stampa, the Funder, the Sulu Claimants, and the Lawyer Defendants.

Petitioners reasonably believe that, based on his role in the Therium Group during the relevant time period, Mr. Bryan has information and records concerning the Therium Group's initial and subsequent funding of the Sulu Claimants, and its involvement in the Arbitration and subsequent attempts to enforce the Purported Awards.  Specifically, Mr. Bryan was a director of Therium USA from August 2023 to at least March 2025. Zeballos Decl. ¶ 8.  The subpoena issued against Mr. Bryan will seek non-privileged communications and documents and testimony concerning: (1) communications between or among any of the Therium Group, Dr. Stampa, PSA, Chancery Advisors, Mr. Webb and the Lawyer Defendants; (2) the Arbitration and the funding thereof; (3) Mr. Cohen's, Ms. Mason's, Mr. Webb, Chancery Advisors and/or the Therium Group's initial involvement with, and, their subsequent provision of, financial and legal support

18

to the Sulu Claimants; (4) the Jersey Defendants' decision to, and motives for, seeking the continuation of the Arbitration, notwithstanding the clear legal effects of the June 29, 2021 Judgment under Spanish law; (5) the Sulu Claimants' enforcement strategy in respect of the Purported Awards; and (6) the level of control that the Therium Group had over the Sulu Claimants' legal strategy.  Mr. Bryan's role indicates that he would have knowledge of these specific topics, and the information gathered from his deposition testimony could be used in the Foreign Proceedings.

<u>**ARGUMENT**</u>

Section 1782 of Title 28 of the United States Code permits the United States District Courts to grant discovery for use in a foreign proceeding. The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782(a).  "Section 1782's twin aims are 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'"  *In re Banco Mercantil del Norte, S.A.*, 126 F.4th 926, 930 (4th Cir. 2025) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004)).

When a court finds that the statutory requirements of 28 U.S.C. § 1782 are met, it may, in its discretion, grant an application for discovery.  The United States Supreme Court has articulated a number of factors the district courts should consider when weighing an application under Section 1782.  As set forth in greater detail below, all these discretionary factors weigh in favor of granting Petitioners the requested discovery.

19

## I. PETITIONERS SATISFY THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782

Courts are authorized to grant an application made pursuant to 28 U.S.C. § 1782 where four requirements are met: (1) the person from whom discovery is sought must reside or is found in the district; (2) the application can be made by either the foreign tribunal or by an interested party; (3) the application must seek testimonial or documentary evidence; and (4) discovery must be for use in proceedings before a foreign or international tribunal. *See In re Banco Mercantil del Norte, S.A.*, 126 F.4th at 930.

Petitioners' application satisfies all four statutory requirements.

*First*, the third party from which Petitioners intend to procure discovery is found in this District. Specifically, upon information and belief, Mr. Bryan resides at 2506 Oakboro Ln, Charlotte, NC 28214. Zeballos Decl. ¶ 7. Therefore, the individual to be subpoenaed resides and/or can be found in the Western District of North Carolina within the meaning of the statute.

Petitioners' Application thus meets the first statutory requirement.

*Second*, Petitioners are "interested persons" authorized to bring this application because they will be the Plaintiffs in the contemplated proceedings and are Plaintiffs in the Jersey Proceedings. The statutory term "interested person" encompasses both parties and contemplated parties to foreign litigation. *See Intel Corp.*, 542 U.S. at 256 ("[t]he text of § 1782(a), 'upon the application of any interested person,' plainly reaches beyond the universe of persons designated 'litigant'").

*Third*, Petitioners seek documents and testimony from Mr. Bryan that relate to: (1) the Therium Group's analysis and decision to fund the Arbitration and efforts to secure third-party investment; (2) the roles played by the Therium Group, Mr. Cohen, and Ms. Mason prior to the Arbitration; (3) the Jersey Defendants' motives for continuing the Arbitration despite the clear

20

legal effect of the June 29, 2021 Spanish judgment and the July 2021 Injunctions; (4) the Sulu Claimants' enforcement strategy, including actions against Petitioners in Luxembourg; and (5) the Therium Group's control over the Sulu Claimants' legal and enforcement strategy.

Therefore, the Application satisfies the third statutory requirement.

Fourth, the discovery sought is for use in actual and contemplated proceedings before foreign tribunals. The regularly constituted courts of Jersey, Spain, and Luxembourg are foreign tribunals within the meaning of the statute. *See, e.g.*, *In re Batbold*, No. 21-MC-218 (RA) (OTW), 2023 WL 2088524, at *1 (S.D.N.Y. Feb. 17, 2023) (discussing application for discovery for use in the "Bailiwick of Jersey"); *In re Polymer Sols. Intl, Inc.*, No. CV DKC 18-1864, 2018 WL 11226113, at *1 (D. Md. June 27, 2018) (finding that "nothing in the record suggests that the Jersey tribunal would not be receptive to the [1782] assistance"); *In re Polygon Glob. Partners LLP*, 21 Misc. 364 (ER), 2021 WL 5042733, at *1 (S.D.N.Y. Oct. 29, 2021) (discussing application for discovery for use in High Court of Spain); *In re Blue Skye Fin. Partners S.A.R.L.*, 22 Misc. 171 (KPF), 2022 WL 2441074, at *3 (S.D.N.Y. July 5, 2022) (granting application seeking discovery for use in the District Court of Luxembourg).

Petitioners' contemplated civil lawsuits satisfy the "for use" requirement of § 1782. The statute's requirement of obtaining evidence "for use" in a foreign proceeding "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel Corp.*, 542 U.S. at 258. In fact, Congress specifically removed the word "pending" from the statute in 1964 to allow would-be litigants to gather evidence before proceedings—often necessary in civil code jurisdictions. S. Rep. No. 1580, 88th Cong., 2d Sess., 7 (1964). Actions reasonably contemplated at the time a petition is filed therefore meet the statute's "for use" requirement. *See, e.g.*, *Intel*

21

*Corp.* 542 U.S. at 259 (2004) ("[W]e hold that § 1782(a) requires only that a [proceeding] be within reasonable contemplation.").

Here, Petitioners have adduced the basis for their contemplated civil claims to be filed before the Spanish courts, have set forth a specific timeframe for filing those claims, and have taken "concrete steps" to initiate the proceedings such as engaging counsel. *In re China Constr. Bank (Asia) Corp. Ltd.*, No. 23-MC-17 (JMF), 2023 WL 3791711, at *2 (S.D.N.Y. June 2, 2023); *see* Soriano Decl. 1 ¶¶ 22–41; Soriano Decl. 2 ¶ 18. The same is true for the Luxembourgish civil claim. *See* Trevisan Decl. 2 ¶¶ 11, 17–21. The Application thus meets the fourth statutory requirement.

For these reasons, Petitioners meet the four statutory requirements of Section 1782, and thus the Court should turn to the discretionary factors outlined by the Supreme Court in *Intel*.

## II.  THE COURT SHOULD GRANT THE PROPOSED DISCOVERY ORDER

The Supreme Court has identified four factors that the district courts are to consider in ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 264–65. Here, all of these factors weigh in favor of granting Petitioners' application.

First, where, as here, discovery is sought from an individual that would not participate in the actual and contemplated Foreign Proceedings, the need for court-ordered discovery is apparent. As the Supreme Court explained, "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign

proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 264 (internal citations omitted). Mr. Bryan will not be a party to the Foreign Proceedings.

The second discretionary factor identified by the Supreme Court is the nature of the foreign proceedings and the receptivity of the foreign tribunal to federal court assistance. *Id.* "[I]n the Fourth Circuit, courts have applied the general approach that, in the absence of a foreign court's clear rejection of the assistance, the § 1782 application should be granted." *In re P.T.C. Prod. & Trading Co., AG*, No. 1:20-MC-00032-MR-WCM, 2020 WL 7318100, at *2 (W.D.N.C. Dec. 11, 2020) (citation modified).

Jersey, Spanish, and Luxembourgish courts are affirmatively receptive to evidence obtained with the aid of other countries; they are members of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.[7] Courts have determined that a country's foreign tribunals are receptive to evidence obtained abroad where they are parties to the Hague Convention on Evidence. *See In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016) (so finding regarding Hong Kong); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp.2d 269, 274 (S.D.N.Y.2004) (same regarding Venezuela). Federal district courts have also granted petitions in support of proceedings before courts in Jersey, Spain, and Luxembourg. *See, e.g.*, *Goenechea v. Davidoff*, Civil No. CCB-15-3384, 2016 WL 560689, at *3 (D. Md. Feb. 11, 2016) (granting 1782 petition where evidence was sought for use in contemplated claim before Madrid First Instance Court); *In re Blue Skye Fin. Partners S.A.R.L.*, 2022 WL 2441074, at *3 (same as to the

---

[7]*See* Hague Conference on Private International Law, Spain Member Page, https://www.hcch.net/en/states/hcch-members/details1/?sid=69 (last visited Jun. 29, 2026); Hague Conference on Private International Law, Luxembourg Member Page, https://www.hcch.net/en/states/hcch-members/details1/?sid=51 (last visited Jun. 29, 2026); Hague Conference on Private International Law, Jersey Declaration Page, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=881&disp=resdn (last visited Jun. 29, 2026).

Luxembourg District Court). *In re Polymer Sols. Intl, Inc.*, 2018 WL 11226113, at *1 (same as to the Royal Court of Jersey).

The third factor—whether the application is an attempt to circumvent any foreign proof-gathering restrictions—also weighs in favor of granting discovery. "This factor entails neither a discoverability requirement nor a quasi-exhaustion requirement that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *In re P.T.C. Prod. & Trading Co., AG*, 2020 WL 7318100, at *3 (citation modified).

As noted above, Petitioners have no means to seek this discovery as it is in support of the actual and contemplated proceedings and from an individual outside the Spanish courts' jurisdiction and this petition reflects a sincere effort to combat the Spanish courts' refusal to grant disclosure in these circumstances. *See* Soriano Decl. 1 ¶ 42. The same is also true in Luxembourg (*see* Trevisan Decl. 1 ¶¶ 50–52) and in Jersey (*see* Benest Decl. ¶¶ 47–48). Thus, the third Intel factor weighs in favor of Petitioners.

Finally, this application is not burdensome as Petitioners' document requests "are narrowly tailored to produce information relevant to the issues now pending . . .." *In re Qwest Commc'ns Intl Inc.*, No. 3:08MC93, 2008 WL 2741111, at *5 (W.D.N.C. July 10, 2008). Producing documents responsive to the subpoena will be straightforward and minimally burdensome. Petitioners could easily cooperate with Mr. Bryan to streamline production obligations. Deposition testimony also is expressly permitted by Section 1782, and Petitioners are not seeking any information that may violate a legally applicable privilege.

## III. THE COURT SHOULD GRANT PETITIONERS' APPLICATION EX PARTE

The Court should grant Petitioners' application *ex parte*. *Ex parte* applications under 28 U.S.C. § 1782 are routinely sought and granted. *See, e.g.*, *United States v. Zubaydah*, 595 U.S.

24

195, 198, 214 (2022); *In re Qwest Commc'ns Int'l Inc.*, 2008 WL 2741111, at \*5; *In re P.T.C. Prod. & Trading Co., AG*, 2020 WL 7318100, at \*1.

Mr. Bryan will not be prejudiced by granting Petitioners' application *ex parte* as he will have an opportunity to challenge the discovery Petitioners are seeking once it is served. *See In re Qwest Commc'ns Int'l Inc.*, 2008 WL 2741111, at \*5.

**CONCLUSION**

For the foregoing reasons, Petitioners respectfully request that the Court (i) grant their Application, (ii) endorse the Proposed Order annexed to this *Ex Parte* Application as Exhibit A, (iii) permit service on Mr. Bryan of the subpoena attached as Exhibit B, and (iv) grant such other and further relief as this Court deems just and proper.

Dated: July 2, 2026

/s/ Adam K. Doerr

Adam K. Doerr
N.C. Bar No. 37807
adoerr@rbh.com
ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon St., Suite 2300
Charlotte, NC 28202
P: (704) 377-2536
F: (704) 378-4000

Oren J. Warshavsky\*
Gonzalo S. Zeballos\*
J'Naia L. Boyd\*
*\*Pro Hac Vice Applications Forthcoming*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212-589-4200
Facsimile: 212-589-4201

*Attorneys for Petitioners*

<u>ARTIFICIAL INTELLIGENCE CERTIFICATION</u>

Pursuant to the Court's June 18, 2024 Order, 3:24-mc-104, I hereby certify that:

·     No artificial intelligence was employed in doing the legal research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

·     Every statement and every citation to an authority contained in this document has been checked by an attorney at this firm and/or paralegal working at their direction as to the accuracy of the proposition for which it is offered and the citation to authority provided.

<u>Adam K. Doerr</u>
Adam K. Doerr

26